```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
                       DALLAS DIVISION

MARTHA AND MARTY WASSERMAN,      §
                                 §
                    Plaintiffs,  §
                                 § Civil Action No. 3:07-CV-0606-D
VS.                              §
                                 §
WE THE PEOPLE FORMS AND          §
SERVICE CENTERS USA, INC.,       §
et al.,                          §
                                 §
                    Defendants.  §
```

                      MEMORANDUM OPINION
                         AND ORDER

In this action brought by plaintiffs Martha and Marty Wasserman (the "Wassermans"), defendants move to dismiss or stay pending arbitration. Concluding that the Wassermans' claims are subject to binding arbitration, the court grants the motion and stays this case pending the outcome of arbitration.[1]

                              I

In July 2004 the Wassermans entered into a contract with defendant Ira Distenfield ("Distenfield") by signing a standard We The People Forms and Service Centers USA, Inc. ("WTP") franchise agreement ("Franchise Agreement") with WTP. The Franchise

---

[1] On July 27, 2007 the court granted the parties' agreed motion and extended until August 7, 2007 the deadline for defendants to file their reply brief in support of this motion. Because the court holds today that defendants are entitled to the relief they seek, and as permitted by N.D. Tex. Civ. R. 7.1(f), the court in its discretion is deciding the motion without awaiting receipt of the reply brief. *See, e.g., Solomon v. Godwin & Carlton, P.C.*, 898 F. Supp. 415, 416 n.2 (N.D. Tex. 1995) (Fitzwater, J.) (applying former Local Rule 5.1(f)).

Agreement granted the Wassermans the exclusive right to open and operate WTP stores in Hidalgo and Starr Counties.  The Franchise Agreement contains clauses that directly relate to the instant motion, including a choice of California law clause, Ds. App. 45, a mandatory arbitration clause, *id.*, and a waiver of right to jury trial clause, *id.* at 47.

The Wassermans allege that there were numerous problems with WTP's performance of its obligations under the Franchise Agreement.  In approximately February 2005, Distenfield sold WTP to defendant Dollar Financial Group, Inc. ("DFG"), which assumed all of WTP's contractual obligations to the Wassermans and established defendant We The People USA, Inc. ("WTP USA") to operate WTP's former business.  The Wassermans contend that, after DFG took over WTP's processing operation, the earlier performance problems were greatly intensified.  This lawsuit followed.  The Wassermans allege that WTP and Distenfield fraudulently induced them to enter into the Franchise Agreement, that they were the victims of common law fraud and deceptive trade practices, and that all defendants have breached their contractual obligations under the Franchise Agreement.

The two defendants who have appeared in this case——DFG and WTP USA——move to dismiss or stay the case pending arbitration.  The Wassermans oppose the motion.  They neither dispute the wording of the Franchise Agreement's arbitration clause, nor do they contest

that their claims fall within the scope of the clause. *See* Ps. Br. 6. Accordingly, in deciding defendants' motion, the court need only address (1) whether under the Franchise Agreement the Wassermans validly waived their right to a jury trial, and (2) whether the arbitration clause in the Franchise Agreement is enforceable.

II

The Wassermans argue that they did not validly waive their right under California law to a jury trial. Because the Franchise Agreement specifies that California law applies, and because the Wassermans rely on California law to support their argument, the court will do so as well. *See Overstreet v. Contigroup Cos.*, 462 F.3d 409, 411-12 (5th Cir. 2006) (holding that when contractual choice-of-law provision has not been called into question by the parties, court will honor validity of that provision).

In California, the right to a jury trial can be waived, but, like the waiver of all constitutional and statutory rights, the waiver must be a voluntary and "knowing, intelligent act[ ] done with sufficient awareness of the relevant circumstances and likely consequences." *In re Hannie*, 3 Cal. 3d 520, 526-27 (Cal. 1970) (citations omitted).[2] The Wassermans contend that the arbitration clause of the Franchise Agreement was not brought to their

---

[2]The court recognizes that *Hannie*'s discussion of jury trial waiver occurs in the context of a criminal case. The Wassermans rely on *Hannie* in their brief, so the court will also do so.

attention, and that the clause's implicit consequence of waiving the right to a jury trial was never explained. They maintain that because of their limited experience with arbitration, they did not realize they were waiving their right to a jury trial by signing the Franchise Agreement. The Wassermans therefore posit that the waiver was not a "knowing and intelligent act," as required under California law.

The court rejects this argument. The Franchise Agreement unequivocally states in a provision separate from the arbitration clause that the right to a jury trial is being waived. *See* Ds. App. 47. Section 7.11 of the Franchise Agreement states, in part, "[t]he parties . . . waive the right to a jury trial in any action or proceeding based on, or arising out of, this Agreement." *Id*. Even if the Wassermans did not understand how arbitration worked at the time they signed the Franchise Agreement, it would be difficult for the contract language to make any clearer that, through § 7.11, they were waiving their right to a jury trial in *any* action or proceeding *based on*, or *arising out of*, the Franchise Agreement.

Because the Franchise Agreement unambiguously states that the right to a jury trial is waived in these circumstances, and because the Wassermans do not attempt in their opposition brief to rebut the plain language of this provision, the court concludes that they "knowingly and intelligently" waived their right to a jury trial by signing the Franchise Agreement.

III

A

"Because the agreement that forms the basis of [the Wassermans'] claims is a Franchise Agreement that involves commerce, questions regarding validity and enforceability of the arbitration clause are governed by the [Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16]." *Singh v. Choice Hotels Int'l, Inc.*, 2007 WL 2012432, at *1 (N.D. Tex. July 11, 2007) (Fitzwater, J.) (citations omitted). Section 2 of the FAA

> create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration, and that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]

*Id.* at *2 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Although the Wassermans do not dispute the strong policy favoring arbitration, they argue that the Franchise Agreement's arbitration clause is both substantively and procedurally unconscionable, rendering the arbitration provision unenforceable under California contract law. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000) ("The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause

under the doctrine of unconscionability.").

B

The Wassermans contend that the "hidden costs" of arbitration render the clause substantively unconscionable. Ps. Br. 12. The court disagrees because, after reviewing the arbitration provision, it concludes that the costs associated with arbitration were plainly disclosed.

The clause states that arbitration will be binding under the rules of the American Arbitration Association ("AAA"), and that "[e]ach party will bear its own costs and expenses in preparing for and participating in the arbitration . . . ." Ds. App. 45. It provides that "each party will pay one-half of the compensation payable to the arbitrators, one-half of any fees to the AAA and one-half of any other costs related to the hearing proceedings." *Id.* A complete list of the AAA's commercial arbitration rules, including the specific costs of arbitration, can be found on the AAA's official website, which is readily accessible via the Internet.

Under the terms of the arbitration provision, payment of the $2,750 and $1,250 filing and service fees mentioned by plaintiffs, *see* Ps. Br. 12; Ps. App. 5, are to be divided equally between the parties. Even if the Wassermans consider these costs to be unreasonable, the AAA "may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees." AAA

R. 49, *available at* http://www.adr.org/sp.asp?id=22440#R49 (last visited July 30, 2007). There is no apparent reason reflected in the record why the Wassermans cannot present their hardship claim to the AAA concerning the cost of administrative fees.

The Wassermans also rely on the cost of the arbitrators' fees, arguing that such costs are unduly burdensome and could be avoided altogether if the instant action were tried in court. To support this position, the Wassermans cite *Armendariz*, where the California Supreme Court stated, the "arbitration process cannot generally require *the employee* to bear any type of expenses that *the employee* would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 6 P.3d at 687 (emphasis added). *Armendariz*, however, is a case that addressed arbitration expenses in the context of employment claims arising under the California Fair Employment and Housing Act. *See Boghos v. Certain Underwriters at Lloyd's of London*, 115 P.3d 68, 74-75 (Cal. 2005) ("In [*Armendariz*], we set out the conditions under which an employer can lawfully require its employees to arbitrate claims arising under the California Fair Employment and Housing Act.").

The instant case, which arises from entry into, and performance under, a Franchise Agreement, is more analogous to *Boghos,* because the Wassermans are not defendants' employees. *Boghos* also dealt with a breach of contract claim that arose out of an insurance policy that included a mandatory arbitration clause

that divided the arbitration costs equally between the parties. *See Boghos*, 115 P.3d at 70-71. In holding that the arbitration clause was not rendered unenforceable by requiring that the insured share costs of arbitration with the insurer, the court distinguished *Armendariz* and emphasized its exceptional jurisprudential role:

> Boghos's claim that the Underwriters have failed to pay benefits under the policy is a claim for breach of contract, pure and simple.
> . . .
>
> [W]e have not extended the [*Armendariz*] cost-shifting rule to common law claims generally. The rule is a judicially created exception to [California] Code of Civil Procedure section 1284.2, which provides that the parties to an arbitration agreement do share costs "[u]nless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree . . . ." We justified our creation of the exception in *Armendariz* by reasoning that section 1284.2 "is a default provision, and the agreement to arbitrate a statutory claim [e.g., a FEHA claim] is implicitly an agreement [by the employer] to abide by the substantive remedial provisions of the statute" and to pay "all types of cost that are unique to arbitration."
> . . . [T]o extend Armendariz to the arbitration of claims not carefully tethered to statutory or constitutional provisions would seem an arbitrary refusal to enforce section 1284.2[.]

*Id.* at 75-76 (citations omitted).

The arbitration clause at issue here makes clear that the costs are to be borne equally by both sides. Absent the exceptional circumstances presented in *Armendariz*, the court does

not find substantive unconscionability where the Wassermans are simply splitting the cost of arbitrators' fees with defendants. Furthermore, there is no indication that the arbitration provision allows defendants any more available remedies than it affords the Wassermans. The clause simply requires potential disputes arising on either side to be resolved through arbitration. Even assuming that the Wassermans were pressured into signing the Franchise Agreement, there is no record evidence that suggests that the parties' "bargaining power" was unequal or that the contract was one of adhesion. The Wassermans in fact appear to acknowledge this. *See* Ps. Br. 10 ("Plaintiffs concede that their bargaining power was not so different from that of the WTP Defendants as to render the Franchise Agreement a contract of adhesion . . . .").

While the court is mindful that the Wassermans may not have fully understood the process of arbitration when they signed the Franchise Agreement, it cannot disregard the objective requirement of mutual consent under California contract law. *See Fair v. Bakhtiari*, 147 P.3d 653, 661 (Cal. 2006) ("The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe.") (citations omitted); *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (Cal. Ct. App. 2006) ("Mutual consent is determined under an objective standard applied to the outward manifestations or expressions of

the parties . . . and not their unexpressed intentions or understanding.") (citations omitted). The process of plaintiffs' negotiating with defendants and ultimately signing the Franchise Agreement qualifies as an outward manifestation of consent to a reasonable observer.

Finally, the Wassermans argue that their costs of travel and lodging in California are burdensome enough to render the arbitration provision unenforceable. The court is again constrained to disagree. Such costs are almost invariably present for at least some parties involved in legal disputes of this type. If a Dallas court were to hear this case, defendants would be required to incur travel and lodging costs similar to those that plaintiffs describe. Moreover, the Franchise Agreement contains a venue provision that unambiguously states that the parties have consented to the jurisdiction of California courts in Santa Barbara County. *See* Ds. App. 45. Therefore, it is reasonable to assume that the Wassermans would eventually end up *litigating* the case in California, incurring the same or similar travel and lodging costs, even if they did not *arbitrate* the dispute in California.

Accordingly, the court concludes that the Franchise Agreement's arbitration clause is not substantively unconscionable.

C

The Wassermans also maintain that the arbitration clause is procedurally unconscionable for similar reasons, insofar as the "key components [i.e., cost] . . . were plainly not disclosed." Ps. Br. 10. Because the court has essentially addressed this argument above, it need not do so again in the context of a procedural challenge.

The Wassermans contend that the clause is procedurally unconscionable because defendants allegedly "denied [them] the 10-day cooling-off period to which they were entitled under federal and state law." *Id*. Assuming *arguendo* that a ten-day "cooling-off" period applied to this contract, that this period was violated, and that such a violation rendered the arbitration clause *procedurally* unconscionable, this would not render the provision unenforceable under California law. *See Armendariz*, 6 P.3d at 690 (holding that, in California, a contract provision must both be procedurally and substantively unconscionable before it may be rendered unenforceable). Because the court concludes that the arbitration provision is not *substantively* unconscionable, a showing of *procedural* unconscionability is insufficient to support the Wassermans' challenge to enforcing the arbitration clause of the Franchise Agreement.

* * *

For the reasons stated, the court grants defendants' June 13, 2007 motion and stays this case pending the outcome of arbitration. The court directs the clerk of court to close this case for statistical purposes pending further order of this court. For cause, any party may move the court to reopen the case (e.g., to enforce or vacate the award).

**SO ORDERED.**

August 3, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE